1   WO

2

3

4

5

6

7                   IN THE UNITED STATES DISTRICT COURT

8                     FOR THE DISTRICT OF ARIZONA

9

10

11

12   Inter-Tel (Delaware),        )
     Incorporated, a Delaware     )
13   corporation, et al.,         )
                                  )
14          Plaintiffs,           )    No. CIV 07-866 PHX RCB
                                  )
15          vs.                   )         O R D E R
                                  )
16   Fulton Communications        )
     Telephone Company, Inc.,     )
17   a Georgia corporation,       )
                                  )
18          Defendant.            )
     _____)
19
20        This matter arises out of a diversity action brought in this

21   Court by Plaintiffs Inter-Tel (Delaware), Inc., Inter-Tel

22   Integrated Systems, Inc., and Inter-Tel Technologies, Inc.

23   (collectively "Inter-Tel") based on allegations of unfair

24   competition, breach of contract, misappropriation of trade secrets,

25   and other statutory violations and tortious conduct.  Compl. (doc.

26   # 1).  Currently pending before the Court are Plaintiffs' motion

27   for preliminary injunction (doc. # 2) against Defendant Fulton

28   Communications Telephone Company, Inc. ("Fulton") and a related

     motion for expedited discovery (doc. # 3).

     . . .

1    The record reflects that Fulton was served on April 27, 2007,
2    but did not file an answer to the complaint until May 21, 2007.[1]
3    Summons (doc. # 7); Answer (doc. # 8).  Fulton has not yet filed a
4    response in opposition to either of Plaintiffs' pending motions
5    (doc. ## 2-3), both of which were filed on April 25, 2007, and the
6    time to serve and file a responsive memorandum has long since
7    passed.  See LRCiv 7.2(c) and App. A ("Time Chart").  Under Local
8    Rule of Civil Procedure 7.2(i), the Court may deem a party's lack
9    of opposition-- or untimely opposition-- as consent to the granting
10   of a motion, and may grant the motion summarily if it is facially
11   meritorious.  LRCiv 7.2(i); Henry v. Gill Indus., Inc., 983 F.2d
12   943, 950 (9th Cir. 1993).  Although Plaintiffs had requested an
13   evidentiary hearing, the Court finds the matter suitable for
14   decision without oral argument under these circumstances.  See
15   LRCiv 7.2(f).  Having carefully considered the arguments raised,
16   the Court now rules.

17   **I.   BACKGROUND**

18   Inter-Tel is involved in the business of selling and leasing
19   telecommunications products and services through arrangements with
20   third party dealers as well as its own direct sales efforts.
21   Compl. (doc. # 1), Ex. 1 ¶¶ 4-5.  This case concerns a dispute with
22   one of those dealers, Fulton, which has hired three former Inter-
23   Tel employees who have allegedly divulged confidential lists of
24   Inter-Tel's customers to Fulton in violation of restrictive
25   covenants in their employment agreements with Inter-Tel.  Fulton,
26
27   ───────────────────
28        [1]   Because counsel has appeared on its behalf, the Court has
     jurisdiction over Fulton.

- 2 -

1   for its part, is alleged to have violated its dealer agreement with

2   Inter-Tel by failing to notify Inter-Tel of the known conversion of

3   its customer lists.  As such, this case revolves around the trade

4   secrets provision of Fulton's dealer agreement as well as the

5   restrictive covenants in the employment agreements of former Inter-

6   Tel employees Benjamin Treadway, Brian Hawk, and Brian McPherson.

7        **A. Former Inter-Tel Employees**

8        Treadway is currently Fulton's President and Chief Executive

9   Officer.  Id. ¶ 6.  Prior to his work with Fulton, Treadway was

10  employed by Inter-Tel from January 11, 1993 until his resignation

11  on March 8, 2006, at which time he served as Inter-Tel's Regional

12  Vice President of Technologies, Eastern Region.  Id.

13       Hawk is currently Fulton's Sales Manager.  Before joining

14  Fulton, Hawk was employed by Inter-Tel from July 29, 1997 until May

15  26, 2006, when he resigned from his position as General Manager of

16  Inter-Tel's Atlanta office.  See Mot. (doc. # 2), Ex. C.

17       McPherson is currently a Fulton Sales Representative.

18  Previous to that, McPherson was employed by Inter-Tel from

19  September 3, 2002 until April 3, 2007, when he resigned from his

20  position as Sales Manager.  See Mot. (doc. # 2), Ex. D.

21       **B. Customer Lists**

22       As sales employees, Treadway, Hawk, and McPherson had access

23  to Inter-Tel's customer lists.  Compl. (doc. # 1), Ex. 1 ¶ 13.

24  These lists, maintained on different electronic databases, contain

25  such information as customers' names, contact persons, maintenance

26  histories, warranty records, contract prices, and contract

27  expiration dates.  Id. ¶ 15.  According to Inter-Tel, this

28  information, which has been generated over several years of

1  operation, is critical to the success of its sales efforts,

2  allowing its representatives to make timely offers to customers for

3  the renewal or upgrade of their equipment and service contracts.

4  See id. ¶¶ 15-16.  As a result, Inter-Tel has limited the

5  availability of this information to selected individuals within its

6  organization, has admonished those individuals not to share the

7  information, has frequently discussed the importance of its

8  confidentiality at regional and senior-level sales meetings-- many

9  of which have been attended by Treadway, Hawk, and McPherson-- and,

10 most importantly, has incorporated restrictive covenants into the

11 employment agreements of those representatives expected to come

12 into contact with the confidential customer lists.  Id. ¶¶ 18-19.

13      **C. The Employment Agreements**

14      The employment contracts of Treadway, Hawk, and McPherson all

15 contain a non-disclosure provision operative both during and

16 subsequent to their employment with Inter-Tel, prohibiting the use

17 or disclosure of Inter-Tel's "Confidential Information" without

18 prior written authorization.  See Mot. (doc. # 2), Ex. B, C, D.

19 The agreements further state that "Confidential Information"

20 includes, inter alia, "Customer Information," which is defined as

21 follows:

22         Customer lists, including the names, addresses
           and telephone numbers of the contact persons or
23         decision makers for any customers or
           prospective customers of the Company, as well
24         as information related to the history of
           negotiations, buying history, financial plans
25         or data provided by the customer in confidence,
           billing information, business plans, particular
26         needs, service history and the terms of any
           contracts or proposals made to any customer or
27         prospective customer of the Company and any
           other information provided by the customer in
28         confidence.

See, e.g., Mot. (doc. # 2), Ex. B at 3.  The agreements further prohibit the employees from copying or disclosing such information "except in furtherance of [Inter-Tel's] business."  Id.

Other post-employment restrictive covenants in the above employment agreements include a covenant against unfair competition, a covenant not to solicit Inter-Tel customers for a period of one-year following employment with Inter-Tel, a covenant not to interfere with contracts, and a covenant not to solicit employees, vendors, suppliers, and contractors.  See, e.g., id. at 4-5.

**D. Violations of Restrictive Covenants by Former Employees**

Inter-Tel alleges that McPherson and the others have breached these covenants before and after their departures from Inter-Tel. In particular, Inter-Tel has presented evidence that McPherson was in communication with Treadway and Hawk about possible employment with Fulton as early as February 19, 2007-- one month prior to his announced resignation from Inter-Tel.  See Mot. (doc. # 2), Ex. E.

On March 13, 2007, one week prior to his resignation and nearly three weeks before his employment with Inter-Tel ended, McPherson sent an email from his Inter-Tel account to Hawk's email account at Fulton with an attached document surreptitiously titled "Mapquest Directions.xls."  Mot. (doc. # 2), Ex. H.  Inter-Tel believes that this file actually contains confidential and valuable customer information.[2]  See Mot. (doc. # 2) at 9.

------

[2]  The Court takes judicial notice of the fact that (1) the ".xls" file extension denotes a computer file accessible by the Microsoft Excel spreadsheet application, and (2) that the popular Internet utility, MapQuest, does not transmit driving directions to users in this file format.

1    Shortly thereafter, McPherson sent a second email from his

2 Inter-Tel account to his personal account carrying an attached

3 document titled "Atlanta Jan 2007 maint.xls."  Mot. (doc. # 2), Ex.

4 G.  Inter-Tel believes that the document transferred by McPherson

5 is a customer list of more than 2,200 active accounts including

6 details of their installed systems and products, monthly contract

7 revenue, and remaining contract duration.  See Mot. (doc. # 2) at

8 9; Compl (doc. # 1), Ex. 1 ¶ 20.

9    McPherson sent a third email from his Inter-Tel account to his

10 personal account with the subject header "FW: Cust List-All,"

11 carrying an attached document titled "ATLANTA STANDARD

12 CONTRACTS.xls."  Mot. (doc. # 2), Ex. G.

13    There is also evidence of email correspondence between

14 McPherson and Inter-Tel employee Jackie Gorham on April 19, 2007 in

15 which McPherson attempts to solicit Gorham to leave Inter-Tel to

16 join Fulton.  Compl. (doc. # 1), Ex. 4.

17  **E. The Dealer Agreement**

18    Fulton became an Inter-Tel dealer shortly after Treadway's

19 departure from Inter-Tel.  Compl. (doc. # 1), Ex. 1 ¶ 7.  As an

20 Inter-Tel dealer, Fulton is privy to sensitive information, id. ¶

21 9, and has covenanted accordingly in its dealer agreement to

22 protect the confidentiality of that information as follows:

23         [Fulton] shall use its best efforts to ensure
          that neither [Fulton] not any of its employees
24        will convert to their own use or to the use of
          any other party any industrial secrets,
25        copyrights, trade secrets, patents,
          manufacturing or other processes (confidential
26        information) or the like, owned by Inter-Tel,
          that is obtained by [Fulton] by reason of [the
27        Dealer] Agreement or otherwise.

28 Mot. (doc. # 2), Ex. A at 14.  Fulton further agreed to notify

- 6 -

1  Inter-Tel in writing of any suspected act of conversion of such

2  confidential information.  _Id._  Under the dealer agreement,

3  Fulton's failure to provide Inter-Tel such notice constitutes a

4  material breach allowing immediate unilateral termination by Inter-

5  Tel.  _Id._

6      **F. Violation of the Dealer Agreement**

7      Inter-Tel has recently received notice from some of its larger

8  direct sales clients that they have been solicited by Fulton, and

9  has surmised from these contacts and the record of McPherson's

10 email correspondence that these clients were solicited by its

11 former employees through the use of the misappropriated customer

12 lists.  _See_ Compl. (doc. # 1), Ex. 1 ¶ 23.  Given Treadway's role

13 as Fulton's current CEO, and the former Inter-Tel employees'

14 positions in Fulton's sales organization, Inter-Tel believes that

15 Fulton is aware of the conversion and improper use of its

16 confidential information, has failed to give notice of the same,

17 and is therefore in breach of its dealer agreement.

18     Inter-Tel filed this action and this motion seeking

19 preliminary injunctive relief on April 25, 2007.  It has apparently

20 also initiated parallel arbitration proceedings against Treadway,

21 Hawk, and McPherson.  _See_ Mot. (doc. # 2) at 3-4, n.3.

22 **II.   STANDARD OF REVIEW**

23     The purpose of a preliminary injunction is to preserve the

24 status quo among the parties pending a final decision on the merits

25 of the action.  _See_ Fed. R. Civ. P. 65; _Dep't of Parks & Recreation_

26 _v. Bazaar Del Mundo, Inc._, 448 F.3d 1118, 1124 (9th Cir. 2006).

27 The Court may grant a preliminary injunction if the moving party

28 demonstrates (1) a probability of success on the merits and the

1   possibility of irreparable harm, or (2) that the lawsuit raises

2   serious questions and the balance of hardship tips sharply in the

3   movant's favor.  <u>Save Our Sonoran, Inc. v. Flowers</u>, 408 F.3d 1113,

4   1120 (9th Cir. 2005).  "These two formulations represent two points

5   on a sliding scale in which the required degree of irreparable harm

6   increases as the probability of success decreases.  They are not

7   separate tests but outer reaches of a single continuum."  <u>Id.</u>

8   (internal quotation and citation omitted).

9   **III. CHOICE OF LAW**

10         In addition to seeking relief under Arizona's Uniform Trade

11   Secrets Act, Ariz. Rev. Stat. §§ 44-401 <u>et seq.</u>, and the Federal

12   Computer Fraud and Abuse Act, 18 U.S.C. § 1030, Inter-Tel has

13   asserted various state law claims for alleged tortious conduct and

14   breach of contract by Fulton.  Compl. (doc. # 1) ¶¶ 59-117.

15   Because this is a diversity case arising in part from alleged

16   misconduct occurring in Georgia, the Court applies federal

17   procedural law and state substantive law.  <u>Erie R.R. v. Tompkins</u>,

18   304 U.S. 64, 78-79 (1938).  Inter-Tel points to two clauses in its

19   dealer agreement with Fulton providing (1) that Arizona law would

20   govern the parties' rights and liabilities under the dealer

21   agreement,[3] and (2) that the parties would waive any defenses

22   relating to venue for actions brought in the state or federal

23   courts located in Maricopa County, Arizona.  Mot. (doc. # 2) at 3

24   n.2.  The Court will consider first the enforceability of the forum

25

26   ───────────────

27         [3]   That choice of law provisions states that "[the dealer
     agreement] shall be governed by and construed in accordance with the
     laws of the State of Arizona without giving effect to choice of law
28   doctrines."  Mot. (doc. # 2), Ex. A at 15.

selection clause.

For purposes of determining venue, Erie principles require
that federal law apply to both the enforcement and interpretation
of forum selection clauses.  Manetti-Farrow, Inc. v. Gucci Am.,
Inc., 858 F.2d 509, 512-13 (9th Cir. 1988).  Forum selection
clauses are presumptively valid.  See The Bremen v. Zapata Off-
Shore Co., 407 U.S. 1, 10 (1972).  Because Defendants have not
challenged its enforceability, the Court will proceed on the basis
that the forum selection clause is enforceable.

Notwithstanding the dealer agreement's choice of law
provision, the Court must apply Arizona choice of law rules.  See
Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Orr v.
Bank of Am., 285 F.3d 764, 772 n.4 (9th Cir. 2002).  Arizona courts
apply the principles of conflict of laws as expressed in the
Restatement, even in the face of contractual choice of law
provisions, as the one employed here, which purport to preclude the
courts from engaging such analysis.  Jackson v. Chandler, 204 Ariz.
135, 61 P.3d 17 (2003); Swanson v. Image Bank, Inc., 206 Ariz. 264,
77 P.3d 439, 441 n.2 (2003) (rejecting parties' attempt to preclude
court from applying conflict of laws principles as "unsound and
contrary to the intent of [the Restatement]"); cf. Magellan Real
Estate Inv. Trust v. Losch, 109 F. Supp. 2d 1144, 1155 (D. Ariz.
2000) (finding choice of law provision inapplicable to tort claims
asserted by one contracting party against another).  Because the
dealer agreement's choice of law provision is not dispositive under
Arizona law, the Court will determine what law to apply to Inter-
Tel's contract and tort claims according to principles of conflicts
of laws.

With respect to Inter-Tel's contract claims, Compl. (doc. # 1) ¶¶ 79-94, the Court is satisfied that, for reasons of certainty, predictability and convenience, Arizona law should govern the parties' contractual rights and duties as they have agreed in the dealer agreement.  <u>See</u> Restatement (Second) of Conflict of Laws § 187 (1971).

As to Inter-Tel's claims of conversion, tortious interference with contract, and unfair competition, Compl. (doc. # 1) ¶¶ 73-78, 102-17, the Court will determine the parties' rights and liabilities according to "the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in [Restatement] § 6."  <u>See</u> Restatement (Second) of Conflict of Laws § 145(1) (1971).  The principles stated in § 6 include the following:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

<u>Id.</u> § 6(2).  In applying these principles, the Court will also consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil,

- 10 -

residence, nationality, place of incorporation and place of

business of the parties, and (d) the place where the relationship,

if any, between the parties is centered." Id. § 145(2).

In the present case, the conduct allegedly causing Inter-Tel's

injuries appears to have occurred solely in Georgia. See Compl.

(doc. # 1) ¶¶ 19-58; Mot. (doc. # 2) at 2-11. Likewise, the

injuries of which Inter-Tel complains are primarily those of

economic harm to its business interests in the Georgia market. See

Mot. (doc. # 2), Ex. 1 ¶ 23; Mot. (doc. # 2) at 15-16; Compl. (doc.

# 1), Ex. 4. Although Inter-Tel's principal place of business is

located in Arizona, Fulton is a Georgia corporation with its

principal place of business in Georgia. Compl. (doc. # 1) ¶¶ 1-6.

Finally, it is clear that the parties' business relationship at the

time of Fulton's alleged misconduct was based in Georgia. Id. ¶¶

8, 19-58. Collectively, these factors strongly favor the

application of Georgia law to the tort issues in this case.

Given the prevalence of the Georgia contacts, the Court finds

that the "further[ance] of harmonious relations between states" and

the "facilitat[ion] [of] commercial intercourse between them"

counsels for the application of Georgia law. See id. § 6, cmt. d

(regarding needs of the interstate system). It may have been a

countervailing, although not determinative, consideration if the

relevant policies of Arizona, as the forum state, differed

significantly from Georgia law on the relevant tort issues. See

id. § 6(2)(b) (relevant policies of the forum). Since there are no

other interested states, the Court concludes that the policies of

the forum and interested states favor the application of Georgia

law. See id. § 6(a), (b), and (c). Moreover, the mere fact that

1    the parties have expressed a preference for Arizona law in the

2    dealer agreement does not create any "justified expectations" or

3    interest in "uniformity of result" with regard to their rights and

4    liabilities for any tortious conduct. <u>See</u> Restatement (Second) of

5    Conflict of Laws § 6, cmt. g; <u>Id.</u> § 145, cmt. b.

6        For all of the foregoing reasons, the Court finds that Georgia

7    is the state with the most significant relationship to the

8    occurrence and the parties with respect to Inter-Tel's claims of

9    conversion, tortious interference with contract, and unfair

10   competition.  Therefore, Georgia law will apply to the resolution

11   of those claims.[4]

12   **IV.   DISCUSSION**

13       Inter-Tel seeks a preliminary injunction to enjoin Fulton from

14   (1) using or disclosing any of Inter-Tel's confidential information

15   to anyone, (2) entering into a contract with, soliciting, or

16   attempting to solicit any Inter-Tel customer that is identified on

17   any Inter-Tel customer lists in the possession of Fulton or its

18   agents for the purpose of selling or leasing telecommunications

19   equipment, and (3) soliciting or encouraging any Inter-Tel employee

20   based in Georgia from leaving the employ of Inter-Tel.  Mot. (doc.

21   # 2) at 1-2.

22       **A. Probability of Success on the Merits**

23       Inter-Tel's request is based on its breach of contract claim,

24   Arizona Uniform Trade Secrets Act claim, and unfair competition

25   _____

26       [4]  Although the issue of choice of law had not been briefed, the
     Court finds it necessary to decide these questions in determining the
27   extent of injunctive relief to which Inter-Tel may be entitled.  The
     Court does so, however, without prejudice to the right of any party
28   to revisit questions of choice of law in the future.

1 claim.  Id. at 11-15.  The Court considers each theory in turn.

2     **1. Breach of Contract Claim**

3     Under the dealer agreement, Fulton agreed "to use its best

4 efforts to ensure that neither it nor any of its employees w[ould]

5 convert to their own use" any of Inter-Tel's confidential

6 information."  Mot. (doc. # 2), Ex. A at 14.  Here, it appears that

7 Fulton not only failed to use its best efforts to protect Inter-

8 Tel's confidential information, but acted with a deliberate design

9 to obtain Inter-Tel's client lists and convert them to its own use,

10 as evidenced by McPherson's emails and Fulton's subsequent

11 solicitation of Inter-Tel's customers.  See Mot. (doc. # 2), Ex. F,

12 G, H; Compl. (doc. # 1), Ex. 1 ¶ 23.  Therefore, Inter-Tel's

13 unopposed motion for preliminary injunction demonstrates a strong

14 probability of success on the merits of the breach of contract

15 claim.  See Coml. (doc. # 1) ¶¶ 79-87; Mot. (doc. # 2) at 11-12.

16     **2. Arizona Uniform Trade Secrets Act**

17     Under Arizona's Uniform Trade Secrets Act, the Court may

18 enjoin "[a]ctual or threatened misappropriation" of a trade secret,

19 and may compel other "affirmative acts to protect a trade secret."

20 Ariz. Rev. Stat. § 44-402(A), (C) (West 2003).  While matters of

21 public knowledge cannot be protected as such, a trade secret may

22 consist of a combination of such elements.  Enter. Leasing Co. v.

23 Ehmke, 197 Ariz. 144, 149, 3 P.3d 1064, 1069 (Ct. App. 1999).  "A

24 list of customers, if their trade and patronage have been secured

25 by years of business effort and advertising and the expenditure of

26 time and money" has been held to "constitute[] an important part of

27 a business" that merits protection as a trade secret.  Prudential

28 Ins. Co. v. Pochiro, 153 Ariz. 368, 371, 736 P.2d 1180, 1183 (Ct.

App. 1987) (quotations and citation omitted).

In the present case, Inter-Tel's customer lists are clearly in the nature of a trade secret, particularly in light of the contract, maintenance, and warranty information that is not generally known outside of Inter-Tel's sales organization, as well as the affirmative acts taken by Inter-Tel to protect the secrecy of this information.  Moreover, in light of circumstances indicative of Fulton's wrongful conduct in obtaining and using Inter-Tel's customer lists, Inter-Tel has demonstrated a substantial probability of success on the merits of its claim under the Arizona Uniform Trade Secrets Act.

**3. Unfair Competition**

Under the principles of unfair competition, a person "who causes harm to the commercial relations of another by engaging in a business or trade" may be liable to the other for such harm arising "from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public."  Restatement (Third) of Unfair Competition § 1 (1995).  While a person is generally not liable for soliciting a competitor's employees who are not under contract, the former employer does have a cause of action where the soliciting competitor "is guilty of some concomitant, unconscionable conduct."  See, e.g., Reeves v. Hanlon, 33 Cal.4th 1140, 1150, 95 P.3d 513, 518 (2004).

Inter-Tel has not cited any Georgia law in support of its unfair competition theory.  However, based on the above persuasive authority, and the evidence of McPherson's attempts to solicit an

Inter-Tel employee to join Fulton in violation of the post-employment non-solicitation clause in his employment contract with Inter-Tel, see Compl. (doc. # 1), Ex. 4; Mot. (doc. # 2), Ex. D at 6, the Court finds that Inter-Tel has demonstrated a reasonable probability of success on the merits of its unfair competition claim.

## B. Possibility of Irreparable Harm

Under Arizona law, "once a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected." Phoenix Orthopaedic Surgeons, Ltd. v. Peairs, 164 Ariz. 54, 59, 790 P.2d 752, 757 (Ct. App. 1989). The possibility of irreparable injury to Inter-Tel from Fulton's alleged misconduct is palpable. The Court has no reason to question Inter-Tel's assertion that Fulton's efforts to lure its employees and largest customers away by the use of its allegedly misappropriated customer lists would cause lasting and irreparable damage to Inter-Tel's business interests in the Georgia market. See Compl. (doc. # 1), Ex. 1 ¶¶ 22-23. With respect to the alleged violations of the non-solicitation clauses of the former Inter-Tel employees' contracts, injunctive relief will provide an effective enforcement mechanism during the limited duration of those restrictive covenants. With regard to Fulton's alleged misappropriation and use of Inter-Tel's confidential customer lists, injunctive relief may be the only effective avenue of relief.

For all of the foregoing reasons, Inter-Tel's unopposed motion for preliminary injunction (doc. # 2) will be granted as facially meritorious. LRCiv 7.2(i); Henry v. Gill Indus., Inc., 983 F.2d

943, 950 (9th Cir. 1993).  The matter of preliminary injunctive relief being resolved, Plaintiff's related motion for expedited discovery (doc. # 3) will be denied as moot.

**IT IS THEREFORE ORDERED** that Inter-Tel's motion for preliminary injunction is GRANTED.

IT IS FURTHER ORDERED directing Defendant Fulton, until further notice from the Court, to refrain from (1) using or disclosing any of Inter-Tel's confidential information to anyone, (2) entering into a contract with, soliciting, or attempting to solicit, for the purpose of selling or leasing telecommunications equipment, any Inter-Tel customer that is identified on any Inter-Tel customer lists in the possession of Fulton or its agents, and (3) encouraging, soliciting, or attempting to solicit any Inter-Tel employee based in Georgia from leaving the employ of Inter-Tel to join Fulton.

IT IS FURTHER ORDERED that Inter-Tel's motion for expedited discovery (doc. # 3) is DENIED as moot.

DATED this 12th day of June, 2007.


_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record

- 16 -